COURT OF APPEALS
DECISION
DATED AND FILED

August 4, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2024AP2153-CR**

Cir. Ct. No.  2021CF89

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

DAVID RAY ROBERTS,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Trempealeau County: RIAN W. RADTKE, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   David Roberts appeals from a judgment convicting him, upon a no-contest plea, of possession of methamphetamine as a repeat

offender. Roberts challenges the factual basis for a traffic stop during which drugs were discovered and contends that the stop was impermissibly extended to allow a canine sniff of his vehicle. We uphold the circuit court's findings of fact and conclude that the stop was not extended longer than reasonably necessary to effectuate its purpose, given that multiple violations were involved. Accordingly, we affirm the judgment of conviction.

## BACKGROUND

¶2      After holding a suppression hearing, the circuit court made the following factual findings relevant to this appeal. At approximately 11:00 p.m. on March 21, 2021, a law enforcement officer observed a vehicle pass by his parked squad car with what appeared to be nonfunctioning registration plate lamps. The officer had observed the same vehicle earlier in the evening at a residence where another person suspected of involvement in drug activity was located. The officer followed the vehicle and observed from 50 feet away that its registration plate lamps were not working properly and that a temporary paper license plate was not legible.

¶3      The officer pulled the vehicle over and made contact with the occupants: the driver, Roberts, and a female passenger whom the officer recognized from a prior drug-related contact. The officer observed at that point that the vehicle's exhaust system was also defective. The officer asked Roberts to exit the vehicle and stand by the officer's squad car where the officer questioned Roberts about his driver's license details, and began the process of reviewing Roberts' record and issuing tickets.

¶4      During this initial interaction, the officer observed Roberts staring at his vehicle quite a bit, prompting the officer to ask Roberts whether there was anything illegal in the vehicle. Roberts' hesitation in answering the question raised

2

the officer's suspicions. In addition, dispatch reported back that both Roberts and his passenger had prior drug arrests and convictions and that the passenger had a bond condition in place that prohibited her from having contact with drug users or dealers. The officer therefore requested that a K9 unit respond to the scene.

¶5 During the period before the K9 unit arrived, the officer continued to work on issuing either warnings or citations and to obtain information from Roberts and his passenger about their criminal histories, as well as driving status (both parties were suspended), insurance, and vehicle-related details. The officer confirmed that both Roberts and his passenger had suspended driver's licenses. The officer also learned that Roberts was on probation for drug-related offenses and had last used methamphetamine two weeks earlier. The officer eventually issued Roberts three tickets.[1] He testified that it typically takes about five minutes to write a ticket.

¶6 The K9 unit arrived 33 minutes after the stop, as the officer was printing out the third ticket. While the canine was deployed, the officer was explaining the tickets to Roberts. Shortly thereafter, the canine positively alerted on Roberts' vehicle. Law enforcement then searched the vehicle and located a scale and a baggie containing a substance suspected to be contraband. Upon further inspection, law enforcement discovered that Roberts' registration plate lamps were actually working, but they were dim because they were covered in mud or dirt.

¶7 The circuit court ruled that the contraband recovered from the vehicle was admissible because the initial stop was supported by reasonable suspicion and

---

[1] The circuit court referred to the officer issuing three "tickets or warnings." We note that the officer testified that he issued warnings for the obscured registration plate lamp and a lack of vehicle insurance and issued a citation for the suspended license.

the stop was not impermissibly extended to wait for the K9 unit. Roberts challenges both determinations.

## DISCUSSION

¶8 WISCONSIN STAT. § 971.31(10) (2023-24)[2] authorizes review of a suppression ruling notwithstanding a defendant's subsequent plea of no contest. When reviewing a suppression ruling, we will uphold the circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2); *State v. Harris*, 2017 WI 31, ¶9, 374 Wis. 2d 271, 892 N.W.2d 663. We will independently determine, however, whether the facts found by the court satisfy applicable constitutional provisions. *Harris*, 374 Wis. 2d 271, ¶9.

¶9 It is constitutionally permissible under the Fourth Amendment for a law enforcement officer to briefly detain an individual for investigative questioning when there exists a reasonable suspicion, based upon specific and articulable facts together with rational inferences drawn from those facts, that criminal activity may be afoot. *See Terry v. Ohio*, 392 U.S. 1, 21-22, 30 (1968). Canine scent evidence derived from having a dog sniff around a vehicle does not, in and of itself, constitute a Fourth Amendment search. *Illinois v. Caballes*, 543 U.S. 405, 410 (2005). Such evidence may be considered as part of the totality of the circumstances to determine the existence of probable cause to search the vehicle. *See State v. Miller*, 2002 WI App 150, ¶12, 256 Wis. 2d 80, 647 N.W.2d 348.

¶10 An investigatory stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). If an officer becomes aware during an investigatory stop of facts

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

sufficient to give rise to a reasonable suspicion that the person has committed or is committing a distinct offense, however, the purpose of the stop may expand and the length of the stop may be properly extended to investigate the new suspicion. *State v. Colstad*, 2003 WI App 25, ¶19, 260 Wis. 2d 406, 659 N.W.2d 394.

¶11 In the context of a traffic stop, routine measures, such as checking a driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance, do not unreasonably extend the stop because they are related to the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly. *Cf. Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015). In contrast, a dog sniff is not part of the traffic mission and does not justify prolonged detention. *Id.* at 355-56. The authority for a traffic stop ends "when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* at 354.

¶12 Roberts first argues that the initial stop of his vehicle was unconstitutional because the reasonable suspicion determination was based upon a clearly erroneous factual finding that the law enforcement officer had observed improperly working registration plate lamps on Roberts' vehicle from "within 50 feet, or at least 50 feet" away. Roberts asserts that the officer's dashboard camera video shows that the officer was considerably farther than 50 feet behind Roberts' vehicle as he followed him down the highway before initiating the stop.

¶13 Roberts ignores the officer's additional testimony that Roberts' vehicle had first passed "around that distance" (i.e., 50 feet) of where the officer's squad car was parked; that the officer had been following Roberts' vehicle for some time before activating the squad car camera; and that the officer estimated that he

came within 50 feet of Roberts' vehicle "[a]t some point." Based upon that additional testimony, we cannot conclude that the circuit court's finding that the officer was within 50 feet of Roberts' vehicle at the time he observed the improperly working registration plate lamps on Roberts' vehicle was clearly erroneous.

¶14     Moreover, we are not persuaded that it was necessary for the officer to have been within 50 feet of Roberts' vehicle in order to have reasonable suspicion that Roberts was in violation of the registration plate lamp statute. The statute requires a motor vehicle to be equipped with "a lamp so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear." WIS. STAT. § 347.13(3). If there is no working registration plate lamp at all, it is irrelevant at what actual distance an officer might be able to read the plate. Here, the officer testified that Roberts' vehicle did not appear to have any working registration plate lamp. The fact that the lamp turned out to be obscured by mud, rather than being nonoperational, does not negate the officer's initial reasonable suspicion.

¶15     Roberts next argues that the officer impermissibly extended the traffic stop by questioning Roberts about nontraffic matters while waiting for the K9 unit to arrive. However, running record checks on drivers and passengers is one of the ordinary tasks incident to a traffic stop that are permissible under *Rodriguez*. Here, the officer's testimony established that dispatch was still relaying information from record checks up until at least 25 minutes into the stop,[3] when the officer was already working on the second ticket. Any nonmission-related questions the officer may

---

[3] The State asserts in its brief that dispatch was still relaying information about the criminal histories of Roberts and his passenger to the officer between 28 and 32 minutes into the stop, and Roberts does not dispute that assertion in his reply brief. However, because the video exhibit was not included in the appellate record, we cannot independently verify that point.

have asked prior to that point did not measurably extend the length of the stop, and the officer proceeded to work on the third ticket in a timely manner. We conclude that the length of the stop was justified, given the number of traffic-related violations the officer needed to address and the criminal histories being provided over an extended period of time by dispatch.

¶16 In light of our conclusion, we need not address alternate arguments by the State that the drug evidence also would have been admissible pursuant to the inevitable discovery doctrine or that the information gained during the stop provided reasonable suspicion to investigate additional crimes.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.